# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **LT CHARACTER, LLC,** § <br> **and CLIFF DEAN,** § <br> § <br> **Plaintiffs,** § <br> § <br> v. § <br> § <br> **RITA MORT,** § <br> § <br> **Defendant.** § | Case No. _____ |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

Plaintiffs LT Character, LLC and Cliff Dean file this Original Complaint against Defendant Rita Mort. In support thereof, Plaintiffs state as follows:

### I.    PARTIES

1.    Plaintiff LT Character, LLC ("LT Character") is a Texas limited liability company with its principal place of business in Tarrant County, Texas.

2.    Plaintiff Cliff Dean is an individual residing in Denton County, Texas.

3.    Defendant Rita Mort is an individual residing in Maricopa County, Arizona. Mort may be served at 10115 E. Bell Rd., Suite 107-409, Scottsdale, Arizona 85260, or wherever she may be found.

### II.    JURISDICTION AND VENUE

4.    This Court has original subject matter jurisdiction over this matter as the amount in controversy exceeds $75,000.00 and complete diversity of citizenship exists between the parties. 28 U.S.C. § 1332.

5. Venue is proper in the Northern District of Texas as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. 28 U.S.C. § 1391(b)(2). Specifically, Defendant serviced contracts for LT Character in this district and elsewhere.

### III.   FACTS

6. LT Character provides character, leadership, coaching and mentoring programs to school students and staff through innovative curriculum, software, and professional development.

7. Dean is a Member and Manager, and the Chief Executive Officer, of LT Character.

8. Mort served as an independent contractor for LT Character. Alongside Dean, Mort also performed work on behalf of Tomlinson's Touching Lives Foundation ("Foundation") as an independent contractor.

9. Because of the nature of the work to be performed on behalf of LT Character, and to protect the proprietary nature of LT Character's business methods, LT Character required that Mort execute agreements pertaining to confidentiality, disclosure of sensitive information, and noncircumvention.

10. On August 3, 2022, through an online form, Mort executed a nondisclosure agreement and noncircumvention agreement.

11. The nondisclosure agreement holds that Mort will not disclose LT Character's confidential information to any person or entity without LT Character's prior written consent. Further, the nondisclosure requires Mort's notification to LT Character of any possible unauthorized disclosure or use of LT Character's confidential information. The nondisclosure agreement also states that Mort agrees not to copy or modify any confidential information without LT Character's prior written consent.

12. The nondisclosure agreement defines "confidential information" as follows:

> The term "Confidential Information" means any information or material which is proprietary to [LT Character], whether or not owned or developed by [LT Character], which is not generally known other than by [LT Character], and which [Mort] may obtain through any direct or indirect contact with [LT Character]. Regardless of whether specifically identified as confidential or proprietary, Confidential Information shall include any information of [LT Character] and any third party with which [LT Character] deals, including, without limitation, business records and plans, trade secrets, technical data, product ideas, contracts, financial information, pricing structure, discounts, computer programs and listing, source code and/or object code, copyrights and intellectual property, inventions, sales leads, strategic alliances, partners, and customer and client lists. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential and any other information that both parties agree in writing is not confidential.

13.     The noncircumvention agreement states that, for a period of five years following the end of the nondisclosure agreement, Mort:

> will not attempt to do business with, or otherwise solicit any business contacts found or otherwise referred by [LT Character] to [Mort] for the purpose of circumventing, the result of which shall be to prevent [LT Character] from realizing or recognizing a profit, fees, or otherwise, without the specific written approval of [LT Character]. If such circumvention shall occur[, LT Character] shall be entitled to any commissions due pursuant to this Agreement or relating to such transaction.

14.     Following the terms of the nondisclosure and noncircumvention agreements, Mort stated: "I approve NDA/Non Circumvent."

15.     In summer 2023, Dean notified Mort that her compensation would change due to underperformance in her contracting role for LT Character. In response, Mort undertook a scheme by which she made false allegations against Dean designed to create conflict with the other Member of LT Character, LaDainian Tomlinson.

16.     On September 15, 2023, Mort communicated with John Ramos, another independent contractor servicing LT Character and the Foundation, and LaTorsha Tomlinson, an affiliate of LT Character and of the Foundation, and the wife of LaDainian Tomlinson.[1] In a text

---

[1] LaDainian Tomlinson and LaTorsha Tomlinson are collectively referred to herein as the "Tomlinsons."

message to the two, Mort stated as follows: "[Dean] is the only one who could go to prison for misappropriating grant money." Mort also alleged in writing that Dean subjected her to "bullying and sexual harassment."

17. Mort's false accusations created a dispute between Dean and LaDainian Tomlinson resulting in litigation (the "Tomlinson Litigation").[2]

18. Dean was unaware of Mort's defamatory statements until they were revealed on October 18, 2024, in third-party discovery as part of the Tomlinson Litigation.

19. As a result of the dispute promulgated by Mort's false accusations, the Tomlinsons attempted to remove Dean from the organizations for which Dean was a Member and to redirect contracts and clients away from LT Character and toward new entities in direct competition with LT Character.

20. As part of the unlawful redirection, Mort began servicing LT Character's contracts for different entities offering the exact same programs and services in exchange for payment from those entities. Mort specifically utilized the contacts, contracts, and materials obtained through LT Character in servicing LT Character's contracts through this different entity. Among Mort's use of LT Character's confidential information was the dissemination of LT Character's materials to the other entities for the use in Texas and California.

21. In addition, Mort solicited LT Character's business contacts for the purpose of circumventing LT Character. Upon information and belief, the purpose of this redirection and circumvention of business was to prevent the realization of profits to LT Character, for which Dean shared ownership with LaDainian Tomlinson.

---

[2] The dispute between Dean, LaDainian Tomlinson, and LaTorsha Tomlinson is not a direct issue in this lawsuit and is already the subject of litigation taking place in in Tarrant County, Texas. *LT Character, LLC et al. v. LaDainian Tomlinson et al.*, Cause No. 352-356450-24, in the 352nd District Court, Tarrant County, Texas.

22. LT Character did not give consent—written or oral—to Mort to service LT Character's contracts and begin competing with LT Character through a new entity.

23. Mort's accusations caused significant reputational and pecuniary harm to Dean including, but not limited to, Dean's reputational harm with his partner, his contract relationships through LT Character, and clients. Further, Dean and LT Character serviced a finite client base—that is, school districts—and worked closely with students. The nature of Dean's work demands a reputation of high morals and character.

24. Mort's statements call into question Dean's morals, integrity, and honesty. Not only does harm to Dean's reputation cost him the contracts and clients which he was servicing, but it prevents him from providing services to existing and similar clients in the future.

25. The value of the harm to Dean's contracts, client relationships, and reputation greatly exceeds $75,000.00, but increases daily.

26. Mort's accusation that Dean misappropriated grant money has no basis in fact. As an independent contractor for LT Character and the Foundation, this accusation—that is, that Dean improperly misappropriated funds belonging to the Foundation—was verifiable as false. Rather than exercise due diligence before making such an inflammatory statement, and stating that Dean "is the only one who could go to prison" for his deeds, Mort negligently and willfully conveyed this false statement *of fact* to LaTorsha Tomlinson and Ramos—outsiders to LT Character—with complete disregard of its truthfulness.

27. Mort's "reminder" in writing to Ramos that she had told him about alleged sexual harassment by Dean acknowledges the slander spoken by her. There is no basis in fact in which Dean "sexually harassed" Mort. That statement is verifiably false, yet Mort again negligently and

willfully conveyed that false statement *of fact* to Ramos and others who were outsiders to LT Character with complete disregard of its truthfulness.

28.   Mort made the statements regarding alleged theft of grant money and sexual harassment to fan the flames of the partnership dispute among LT Character, utilizing an opportunity to garner the goodwill of the Tomlinsons to Dean's detriment, so as to ensure her continued contract payments were uninterrupted.

29.   Mort's statements were not a matter of opinion. Mort made the statements with the intent that the Tomlinsons would act in attempting to remove Dean from LT Character and with the intent that Dean suffer injury and ridicule.

## IV.   CLAIMS

### Claim One: Libel and Slander

30.   The preceding paragraphs are incorporated as if fully set forth herein.

31.   To establish libel and slander, Dean must show that Mort: (i) published a statement; (ii) that was defamatory toward Plaintiff; (iii) while acting with negligence "regarding the truth of the statement." *Backes v. Misko*, 486 S.W.3d 7, 24 (Tex. App.—Dallas 2015).

32.   Mort published spoken and written statements about Dean to a third party.

33.   Mort's statements were defamatory in nature, as they were intended to injure Dean's reputation, expose him to ridicule and pecuniary injury, and impeach his integrity, honesty, and virtue. *Id.* Mort's statements were objectively verifiable and not an opinion.

34.   Mort acted negligently regarding the truth of the statements. *Id.* The statements have no basis in fact and were verifiable to Mort through review of records and information available to her, or through diligent inquiry.

35.   Dean suffered pecuniary and reputational injury because of Mort's conduct.

## Claim Two: Breach of Contract

36. The preceding paragraphs are incorporated as if fully set forth herein.

37. To establish breach of contract, LT Character must demonstrate: (i) the existence of a validly formed contract; (ii) that LT Character tendered performance as required by the contract; (iii) that Mort "breached the contract by failing to perform or tender performance as contractually required"; and (iv) that LT Character suffered damages because of the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

38. The nondisclosure and noncircumvention agreements are valid contracts.

39. LT Character performed as required under the contract.

40. Mort breached the contract with LT Character by utilizing the proprietary and confidential information of LT Character to circumvent contract opportunities for LT Character and redirect those opportunities to other entities unaffiliated with Dean.

41. Mort's conduct resulted in lost revenue to LT Character in an amount to be proven at trial.

## V.   PRAYER

Plaintiffs Cliff Dean and LT Character, LLC pray and respectfully request that the Court:

a. Enter judgment in favor of Plaintiffs and against Mort on all counts of this Complaint;

b. Determine that Mort's conduct constitutes slander and libel, that Dean was injured by such conduct, and that Mort is liable to Dean for such unlawful conduct;

c. Determine that Mort's conduct constitutes breach of contract, that LT Character was injured by such conduct, and that Mort is liable to LT Character for such unlawful conduct;

d. Award Plaintiffs all damages arising out of Mort's conduct;

e. Award interest on all amounts awarded; and,

f. Grant Plaintiffs any other relief as the Court deems necessary and proper.

Respectfully submitted,

*/s/ Cody L. Towns*
Cody L. Towns
Texas Bar No. 24034713
Elizabeth H. Gebert
Texas Bar No. 24125264
**TOWNS LAW FIRM, P.C.**
4851 Lyndon B. Johnson Fwy., Suite 720
Dallas, Texas 75244
Telephone: (469) 421-1500
Facsimile: (469) 421-1505
Email:  ctowns@townslawfirm.com
            egebert@townslawfirm.com

**ATTORNEYS FOR PLAINTIFFS
LT CHARACTER, LLC and
CLIFF DEAN**